IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

VANCE ARLEY SMITH,           )
                             )
        Plaintiff,            )
                             )
    v.                        )    Case No. CIV-14-382-JHP-SPS
                             )
CAROLYN W. COLVIN,           )
Acting Commissioner of the Social  )
Security Administration,      )
                             )
        Defendant.            )

# REPORT AND RECOMMENDATION

The claimant Vance Arley Smith requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born May 21, 1960, and was fifty-two years old at the time of the administrative hearing (Tr. 35, 135). He has a high school education, and has worked as a construction worker I and diesel mechanic (Tr. 30, 162). The claimant alleges he has been unable to work since October 31, 2011, due to severe artery disease of the brain (causing memory loss and inability to reason, concentrate, or make rational decisions or deductions), diabetes, arthritis, anxiety attacks, severe depression, headaches, vision problems, arm weakness, breathing problems, and an itchy head (Tr. 161).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on December 14, 2011. His applications were denied. ALJ Kim D. Parrish held an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 5, 2013 (Tr. 18-31). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined

in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he was able to perform frequent handling and grasping with the right and left arms and hands, and must avoid all exposure to hazards such as working at unprotected heights and around dangerous machinery (Tr. 23). Additionally, the ALJ found that the claimant was able to sustain concentration and focus necessary to perform simple routine tasks for unskilled work (Tr. 23). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e. g.*, hand bander, racker, and inspector and hand packager (Tr. 31).

## Review

The claimant argues that the ALJ erred by: (i) failing to properly evaluate the opinion of a state reviewing physician as to his mental impairments, and (ii) failing to properly evaluate the opinion of his treating nurse practitioner. The undersigned Magistrate Judge finds that the ALJ *did fail* to properly evaluate the opinion of the claimant's nurse practitioner, and the decision of the Commissioner should be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of status post heat stroke with left sided weakness, chronic neck pain, osteoarthritis, small vessel cerebral vascular disease, affective disorder, and adjustment disorder with mixed depression and anxiety (Tr. 20). The claimant was admitted to the hospital for a heat-related illness on September 1, 2011, at which time he was also diagnosed with a cerebrovascular disease – small vessel (Tr. 220). A cranial MRI confirmed small vessel disease within the cerebral circulation (Tr. 222, 224). Relevant treatment records indicate that the claimant was

regularly treated at Good Shepherd Community Clinic by Advanced Registered Nurse Practitioner Margaret Scrifres. Treatment notes begin January 31, 2012, and reflect treatment for the claimant's diabetes, migraines, and cerebral ischemic artery disease (Tr. 317-323). In February 2012, the claimant had a referral pending to neurology, and Ms. Scrifres noted under objective findings that the claimant had a weakening grip and had been dropping things (Tr. 319).

On January 13, 2012, William Cooper, D.O., completed a physical consultative examination of the claimant, in which he assessed the claimant with history of heat stroke and hypoglycemia (at the age of 26), diabetes, dizziness, frequent cephalgia, chronic neck pain, osteoarthritis of the cervical spine, parasthesias of the upper extremities, and small vessel cerebrovascular disease (Tr. 274). Upon exam, he noted that the claimant had 5/5 grip strength bilaterally, and was able to perform gross and fine tactile manipulation, but that he had pain with full range of motion of the cervical spine (Tr. 274). A state reviewing physician then found that the claimant could perform medium work with no limitations (Tr. 310-316).

On January 7, 2013, Nurse Practitioner Scrifres completed a medical assessment of the claimant's physical ability to do work-related activities. She indicated that the claimant could sit and stand two hours each out of an eight-hour workday, and walk three hours in an eight-hour workday, but could not work an eight-hour day at any level, and that a sit/stand option with normal breaks would not change the answer (Tr. 331). Additionally, she indicated that the claimant could lift up to twenty pounds repetitively, and could handle objects (simple grasping, pushing and pulling of arm controls, fine

manipulation) with the right hand, *but not* the left hand (Tr. 331). Finally, she indicated that the claimant could use his right foot for pushing and pulling leg controls, *but not* the left foot or both feet, and that he needed to elevate his legs (Tr. 331). She also noted that the claimant experienced daily headaches, blurred vision, and fatigue (Tr. 331).

The claimant testified at the administrative hearing that his biggest problem was that he had lost his grip on the left side of his body, and that he had difficulty concentrating and with breathing (Tr. 36). He stated that since his heat stroke in 2011, he had been getting progressively worse (Tr. 36). As to his daily activities, the claimant testified that he cleans his house, prepares his meals, uses his vacuum cleaner with "a little bit of difficulty," and performs regular household duties (Tr. 37). He testified that when he is cooking he has to use his right hand to help him raise things onto the counter from the oven because his left hand cannot hold it (Tr. 37). He also stated that migraines and blurred vision began after his heat stroke, and that he no longer reads or drives (Tr. 38-39, 44). When asked about his left side problems, the claimant testified that it is the entire left side of his body that experiences tingling, pain, and soreness, and that especially his hand and arm are worsening (Tr. 40, 43).

In his written opinion, the ALJ summarized the medical evidence in the record, as well as the claimant's hearing testimony. The ALJ, however, found that Ms. Scrifres' opinion was unsupported by clinical findings and inconsistent with the record as a whole and assigned it "little weight," stating that that medical record was silent as to any problems with the claimant's lower extremities and the need to elevate his legs, and erroneously stating that she found that claimant had limitations of his right arm but not

his left (Tr. 29).  Additionally, the ALJ repeatedly referred to the "scant" nature of notes from Good Shepherd clinic, and also referred to a "lack of contemporaneous treating records" in support of the weight assigned to this opinion (Tr. 25, 29).

Social Security regulations provide for the proper consideration of "other source" opinions such as those provided by Ms. Scrifres herein.  *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *3, *6 (Aug. 9, 2006) ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.").  The factors for evaluating opinion evidence from "other sources" include:  (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors.  *See* Soc. Sec. Rul. 06-03p, at *4-5; 20 C.F.R. § 404.1527(d).  *See also Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [emphasis in original] [internal citations omitted].  Here, the ALJ appeared

to apply some of these factors, but actually misstated Ms. Scrifres' opinion in an effort to discredit it when he criticized her opinion related to the claimant's weakness in one hand. Ms. Scrifres specifically stated that the claimant had left-sided weakness, but the ALJ believed she indicated right-sided weakness and noted that right-sided weakness was in direct contrast to the claimant's own hearing testimony (Tr. 29, 331). Instead, the ALJ opted to rely on Dr. Cooper's one-time exam opinion which-predated most of Ms. Scrifres' treatment notes. *See, e. g., Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.") *citing Vincent ex rel. Vincent v. Heckler*, 739 F.3d 1393, 1394-1395 (9th Cir. 1984). Because this is a significant misunderstanding with regard to the evidence and directly relates to findings regarding the claimant's RFC, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis.

On remand, the ALJ should evaluate *all* the evidence in the record related to both the claimant's physical *and* mental impairments, as well as the combined effects of these impairments, as required by the law and regulations. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

As set forth above, the undersigned Magistrate Judge PROPOSES that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the undersigned

RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

    **DATED** this 3rd day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**